UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 04 CR 534 |
| | ) | |
| MARTIN VALADEZ | ) | Judge John W. Darrah |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America ("the Government") brought an indictment charging Defendant, Martin Valadez, with conspiracy to distribute multiple kilograms of cocaine, possession of cocaine, and money laundering. The indictment also sought forfeiture of certain property for these crimes, including: (1) a Cadillac Escalade with VIN 1GYEK63N72R102964; (2) real property owned by Defendant at 421 Bellvue in Round Lake Park, Illinois; and (3) real property owned by Defendant at 26174 Marshall Avenue in Ingelside, Illinois. Prior to trial and pursuant to stipulations, Defendant sold both parcels of real property. The proceeds of those sales are currently being held in escrow, and it was stipulated that those funds may be substituted as the property subject to forfeiture.

After a jury trial, Defendant was convicted of all counts brought in the indictment. Specifically, the jury found that Defendant was guilty of possessing 12.4 kilograms of cocaine found behind Defendant's residence at Marshall Avenue and that Defendant laundered $41,500.00 used to purchase the Marshall Avenue property.

Defendant waived his right to a jury determination on the issue of forfeiture, and the parties rested on the evidence presented at trial. The parties agree that the Court will decide the forfeiture issues without a jury.

The Court has considered the evidence, including the testimony of witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein. The Court, in weighing the testimony of the witnesses, has considered: (1) the witnesses' intelligence; (2) the witnesses' memory; (3) the witnesses' ability and opportunity to observe; (4) the witnesses' manner while testifying; (5) any interest, bias, or prejudice of the witnesses; and (6) the reasonableness of the witnesses' testimony when considered in light of all the evidence in the case.

Pursuant to Federal Rules of Criminal Procedure 23 and 32.1, the Court hereby enters the following Findings of Fact and Conclusions of Law based upon consideration of all the admissible evidence, as well as the Court's determination of the credibility of the trial witnesses. To the extent that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be considered Findings of Fact, they shall also be deemed Findings of Fact.

## FINDINGS OF FACT

Defendant participated in a conspiracy to distribute cocaine from 1999 through 2004. Defendant's reported income for the years he participated in the conspiracy never exceeded $41,000.00. Specifically, in 2002, Defendant and his wife's combined income was approximately $19,000.00. Defendant failed to report any income from a business he owned, Fastener Personnel, Inc. Despite this income, Defendant made a number of cash transactions in

2002 and 2003, including $11,160.00 to purchase an automobile in October 2002 and a $9,000.00 down payment to purchase a Cadillac Escalade in early 2003.

Defendant, in recorded conversations, admitted to: (1) storing cocaine in his Bellvue residence; (2) building his Marshall Avenue residence with drug money; and (3) not making any money from Fastener Personnel. Defendant also stored cocaine under a shed in a neighbor's yard near the Bellvue residence; Defendant would then retrieve the cocaine from the shed and distribute it inside his laundry. Defendant owned a money counter, which he kept in the garage of the Marshall Avenue residence.

Alfredo Juarez and Ricardo Galvan sold cocaine for Defendant and retrieved cocaine from Defendant's sources. Juarez, Galvan, and Defendant checked the quality of the cocaine inside the Marshall Avenue residence. Furthermore, Juarez acted as a lookout while Defendant engaged in drug activity inside the Bellvue residence. Galvan also obtained cocaine from Defendant and delivered cash to Defendant from narcotic sales at both the Bellvue residence and the Marshall Avenue residence.

## CONCLUSIONS OF LAW

The Government contends that the Escalade should be forfeited, as it represents the proceeds of the drug conspiracy. The Government also contends that the Bellvue property should be forfeited, as it was used to facilitate the commission of the drug conspiracy. The Government further contends that the Marshall Avenue property should be forfeited because: (1) it was used to facilitate the drug conspiracy, and (2) it derived from the proceeds of the drug conspiracy and money laundering crime.

Section 853 of Title 21 of the United States Code provides, in pertinent part, that:

(a) Property subject to criminal forfeiture. Any person convicted of a violation of this title or title III punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law –

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 408 of this title (21 U.S.C. 848), the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise. . . .

(d) Rebuttable presumption. There is a rebuttable presumption at trial that any property of a person convicted of a felony under this title or title III is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that –

(1) such property was acquired by such person during the period of the violation of this title or title III or within a reasonable time after such period; and

(2) there was no likely source for such property other than the violation of this title or title III.

For the Government to obtain forfeited property, "there must be a connection between the forfeited proceeds and the underlying criminal offenses." *United States v. Messino*, 382 F.3d 704, 714 (7th Cir. 2004) (*Messino*). The parties agree that under both a "proceeds" theory and a "facilitation" theory, the burden of proof is preponderance of the evidence. *Messino*, 382 F.3d at 714.

The Government contends that the Escalade is traceable to the proceeds of the drug conspiracy. This automobile was purchased in 2003, during the drug conspiracy. Defendant and

his spouse had a total of $19,000.00 in reported income in 2002; but during this time, Defendant's wife purchased an automobile in October 2002 for $11,600.00 in cash. Defendant then paid a $9,000.00 cash down payment on the Escalade in early 2003.

Defendant argues that the vehicle should not be forfeited because it was paid for by legitimate funds from Defendant's ownership interest in a business, Fastener Personnel. According to Defendant, the automobile was purchased in the name of Defendant and Fastener Personnel. Defendant contends that in November 2002, Fastener Personnel deposited $12,000.00 in its bank account and withdrew $9,500.00 in cash. Thus, Defendant contends that this money was used to purchase the Escalade in early 2003, a few months later. However, there is no evidence that this money went to Defendant or was used as the down payment on the Escalade. Further, Defendant failed to report any income from Fastener Personnel on his 2002 income tax return and admitted that Fastener Personnel was not earning any income.

Based on the above, the Government has proven, by a preponderance of the evidence, that there was no likely source for such property other than the drug conspiracy; and Defendant has failed to rebut the presumption, by a preponderance of the evidence, that the Escalade constituted the proceeds of the drug conspiracy.

The Government next contends that the Bellvue property facilitated the drug conspiracy. Defendant stored cocaine in the residence, as well as on a neighbor's property. Defendant also distributed cocaine and received the proceeds of drug transactions at the Bellvue residence. Defendant argues that Galvan and Juarez are not credible based upon their demeanor, prior

5

criminal history, and their plea bargain with the Government for a reduced sentence. The Court, after observing the witnesses, finds Galvan and Juarez credible. Their testimony is further supported and consistent with admissions made by Defendant in the recorded conversations.

As such, the Government has proven, by a preponderance of the evidence, that the Bellvue property was used to facilitate the commission of the drug conspiracy.

Lastly, the Government asserts the Marshall Avenue property and residence was used to facilitate the drug conspiracy. The Government also contends the property and residence represents the proceeds of the drug conspiracy and money laundering crime. This property was sold, and the proceeds are being held in escrow by the Government.

The jury found Defendant guilty of laundering $41,500.00 to purchase the Marshall Avenue property. Therefore, Defendant concedes that he cannot challenge the forfeiture of $41,500.00 from the sale of the property.

As to the balance of the funds escrowed from the sale of the property, Defendant argues that no evidence exists demonstrating that the proceeds of the drug conspiracy were used to construct or finance the residence. Defendant further argues that Galvan and Juarez lacked credibility in presenting evidence that the Marshall Avenue property was used to facilitate the drug conspiracy.

Defendant, though, admitted on tapes that he used money from the drug conspiracy to finance the construction of the Marshall Avenue residence. Cocaine was found behind this residence, and the quality of this cocaine was determined inside the residence. Further, the evidence showed that Galvan obtained cocaine from Defendant at the residence and delivered

proceeds of drug transactions to Defendant at the residence and that Defendant had a money-counting machine inside the Marshall Avenue residence. The Court also finds the testimony of Galvan and Juarez credible in this regard.

Accordingly, the Government has proven, by a preponderance of the evidence, that the Marshall Avenue property was derived from the proceeds of the drug conspiracy and that the Marshall Avenue property was used to facilitate the commission of the drug conspiracy.

## **CONCLUSION**

For the foregoing reasons, it is ordered that Defendant forfeit the following property to the Government: (1) a Cadillac Escalade with VIN 1GYEK63N72R102964; (2) the proceeds from the real property owned by Defendant at 421 Bellvue in Round Lake Park, Illinois; and (3) the proceeds from the real property owned by Defendant at 26174 Marshall Avenue in Ingelside, Illinois.

Dated: April 6, 2005

JOHN W. DARRAH
United States District Judge