# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 04 CR 534 |
| | ) | |
| MARTIN VALADEZ | ) | Judge John W. Darrah |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America ("the Government") brought an indictment charging Defendant, Martin Valadez, with conspiracy to distribute multiple kilograms of cocaine, possession of cocaine, and money laundering. After a five-day jury trial, Defendant was convicted of all counts. Defendant has filed a Motion for a New Trial, pursuant to Federal Rule of Criminal Procedure 33. Defendant contends new evidence – letters from other co-defendants and prisoners – demonstrates that he is entitled to a new trial.

## BACKGROUND

At the jury trial, the Government adduced evidence consisting of: (1) eyewitness testimony of Defendant's drug dealing and drug possession; (2) testimony of federal agents who recovered cocaine hidden behind Defendant's home and seized $134,000.00 in cash delivered by Defendant; (3) recorded statements wherein Defendant admitted that he was involved in drug transactions and money laundering; (4) financial records demonstrating Defendant and his family spent money beyond their reported income; and (5) the existence of a money counter in

Defendant's garage. This evidence included testimony from two co-defendants, Alfredo Juarez and Ricardo Galvan, which detailed Defendant's drug dealing and drug possession. Hugo Salinas also testified at trial as to some of Defendant's drug activities.

After trial, Defendant presented letters from five different persons: (1) two letters from co-defendant Michael Petika, (2) two letters from Craig Braun, (3) a letter from Angel Pacheco Diaz, (4) a letter from Victor Castro, and (5) a letter from Juan Garcia.

Petika testified before the grand jury incriminating Defendant and ultimately pled guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, but Petika was a fugitive during the trial and did not testify. The first letter states that Petika had not observed Defendant involved with drugs and that drugs were placed behind Defendant's house by Petika at the instruction of Galvan and Juarez. Petika also states that he was told by law enforcement officials – including Drug Enforcement Agency Special Agent David Brazao, who testified at trial – to lie; according to the letter, the law enforcement officers' instructions to lie were accompanied by false promises and physical coercion. The letter further states that Salinas told Petika that Salinas lied to the grand jury. Petika's second letter states that while Petika was on the same floor of the prison with Juarez, Juarez told Petika that: (1) Special Agent Brazao instructed Juarez to lie about where Defendant stored cocaine; (2) Juarez lied before the grand jury and at trial; and (3) Special Agent Brazao and other law enforcement physically abused Juarez and threatened to hurt Juarez's family.

Braun testified before the grand jury against Defendant, and his statement was given to Defendant in advance of trial; but Braun did not testify at trial. His first letter states he lied to the grand jury because: (1) he was unaware of any drug activity committed by Defendant and (2) the

drugs attributed to Defendant actually belonged to Juarez and Galvan. Braun's second letter once again states that Braun lied before the grand jury concerning Defendant's drug activity. Both letters indicate that Braun was threatened with imprisonment by Special Agent Brazao if Braun refused to lie.

Diaz, who did not testify at trial, was a prisoner at the same facility as Alfredo Juarez. Diaz's letter claims that Juarez stated that: (1) Juarez helped move cocaine belonging to Galvan to a field and (2) Juarez lied, at the behest of law enforcement officers, to obtain a deal.

Castro and Garcia were prisoners with both Galvan and Defendant. Neither testified at trial. Both Castro's and Garcia's letters state they observed a conversation between Galvan and Defendant where Galvan admits to lying at trial about Defendant's activities.

## ANALYSIS

Defendant argues that a new trial is necessary because the letters demonstrate that perjured testimony was used by the Government in front of the grand jury and at trial and, even if they do not demonstrate perjury was committed, constitute newly discovered evidence requiring a new trial.

Federal Rule of Criminal Procedure (b)(1) provides that, within three years after the verdict, a defendant may file a motion for a new trial grounded on newly discovered evidence. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision whether to grant a motion for a new trial is committed to the discretion of the district court. *United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000); *United States v. Ferguson*, 35 F.3d 327, 331 (7th Cir. 1994)

(*Ferguson*). The decision whether to hold an evidentiary hearing is also committed to the discretion of the district court, and a hearing is not required unless there are "unique circumstances." *Olson v. United States*, 989 F.2d 229, 233 (7th Cir. 1993).

For Defendant to obtain a new trial on the use of perjured testimony, he must show that: (1) the Government's case included perjured testimony, (2) the Government knew or should have known of the perjury, and (3) there is any likelihood that the perjured testimony could have affected the judgment of the jury. *Ferguson*, 35 F.3d at 332. The allegedly perjured testimony must be related to Defendant's guilt or innocence and material facts instead of collateral issues. *Ferguson*, 35 F.3d at 332. An evidentiary hearing is not required in this regard if the district court can make "a determination based upon its observations of the relevant witness(es) at trial." *United States v. Griffin*, 84 F.3d 912, 930 (7th Cir. 1996).

The letters produced by Defendant do not demonstrate that the Government's case included perjured testimony. The letters – which include alleged statements attributed to Juarez, Galvan, Salinas – arguably may relate to the credibility and weight of their trial testimony but do not establish that lies were told under oath at trial. None of the letters came from a trial witness, and none of the letters is a sworn statement. Furthermore, the Court had an opportunity to observe and hear Juarez, Galvan, and Salinas testify at trial; and their testimony was credible and consistent with other evidence adduced by the Government. As detailed above, this evidence included admissions by the Defendant that he was involved with drug transactions and money laundering; detailed financial records demonstrating Defendant and his family spent money beyond their reported income; and the credible testimony of federal agents who recovered

4

cocaine concealed behind Defendant's home and a large sum of cash delivered by Defendant. For these reasons, even if the disputed testimony was perjured, there was no likelihood that the perjured testimony could have affected the judgment of the jury.

For Defendant to obtain a new trial based on newly discovered evidence not based upon perjured testimony, he must demonstrate that the evidence: "(1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Severson*, 49 F.3d 268, 271 (7th Cir. 1995). Defendant contends that: (1) the new evidence casts doubt on the credibility of Special Agent Brazao; (2) the letters from Petika, who was unavailable for trial, and Braun state that Defendant was not involved with drug activities; and (3) the letters from Petika, Diaz, Castro, and Garcia cast doubt on the credibility of Juarez and Galvan.

However, to the extent the letters cast doubt on the credibility of Juarez, Galvan, Special Agent Brazao, or any other witness, they are not appropriate to consider in a motion for a new trial based upon newly discovered evidence as that material is merely impeaching, at best. Defendant has also not shown why the alleged new evidence from Braun could not have been discovered before trial with due diligence, as the Government provided Defendant with Braun's grand jury testimony before trial. Defendant also fails to explain why Diaz's alleged new

5

evidence could not have been discovered before trial with due diligence. Further, even if the letters were considered and their authors testified consistently at trial, this evidence would probably not lead to an acquittal in the event of a retrial, based on the evidence discussed above.

Finally, the circumstances regarding the creation of the letters are suspicious. Petika and Castro provided statements, in the presence of their attorneys, explaining that Defendant or another gang member coerced their creation. Petika and Castro also assert that they only recopied letters that Defendant wrote himself. Braun was interviewed by the Government officials and said that he was coerced into writing the letter by Defendant's associate.

## CONCLUSION

Defendant has failed to identify any unique circumstances mandating an evidentiary hearing. For the foregoing reasons, Defendant's Motion for a New Trial is denied.

Dated: August 22, 2005

JOHN W. DARRAH
United States District Judge